Our fourth case this morning is Robinson v. Davol, Inc. Our fifth You're into your rebuttal time, Ed. Okay, I will sit down. Okay, that's fine. Thank you. Mr. Martin. Good morning, Your Honors. May it please the Court, James Martin for the appellees. Plaintiff's disagreements with the district court's rulings with respect to the expert's testimony, whether we're talking about any one of the experts, run aground on the standard of review, and they run aground on waiver principles as well. This court has made it clear in its opinions that arguments that aren't advanced in response to summary judgment motions are forfeited for purposes of appeal. And here, the two arguments that counsel has advanced this morning in support of the overruling of the judge's decision were not made specifically in response to the summary judgment. There was no differential diagnosis argument, and there was no argument that somehow the combination of Dr. Hyman with Dr. Furzoco would get by summary judgment. But even if we entertain those arguments, the notion that there was an abuse of discretion here in the ruling made by the district court cannot be squared with this court's precedence. The court looks at two things in a Daubert inquiry. First, did the district court apply the framework that Daubert required? He most certainly did. In his opinion, he lays out the standard. This court has directed courts to apply before he gets in to the expert testimony. No error there. On the decision itself, of course, he has wide latitude under this court's cases, under the Supreme Court's decision in Joyner, in performing his gatekeeping function. And what this court has asked for is for the judge to explain his reasoning on reliability, on fit, and lay out the analysis of why he or she draws the conclusion that the opinions are inadmissible. He most certainly did that as well. And it would be hard to explain half a dozen decisions from this court that we have decided if that was determined to be an abuse of discretion, even if there is disagreement with how the judge got there. Now, unpacking the testimony a little bit further here, counsel has tried to describe Dr. Furzocco's theory to start with as a well-accepted differential diagnosis methodology that comes straight out of the Patch litigation. As district court properly found, it is none of those things. It was a novel theory offered for the first time in his deposition, and the key to it, of course, was Patch causation by perforation. It wasn't about ruling in or ruling out infection. It was about whether there was any substantiation at all for this mechanism of causation. And there, not only did Dr. Furzocco never use the term differential diagnosis anywhere in his deposition, but he made it clear that his causation theory was just what the judge said it was, offered for the first time in this litigation to fit what he saw. Now, what the judge did then was say, okay, I'm going to expect a little more corroboration for that since it's the first time in litigation opinion, so he looked for it. Could he find it in the record? No. Dr. Furzocco's opinion, far from being a differential diagnosis, ruled out or dismissed or adopted an opinion contrary to a host of record facts that the district court knew, and differential diagnosis is not used for that. It's not used for contradicting evidence. It's not used for eliminating evidence that's uncomfortable. So he said, okay, there's no record foundation for it. Well, I better look further. So he did look further, and he looked to the only thing that Dr. Furzocco said he relied on, and that was ubiquitous patient experience. Now, that patient experience wasn't described either. He didn't know the details of it, and he didn't supply any records to substantiate it, and in the Chapman and Brown cases, this court has made it clear that that sort of personal experience in a vacuum, even from a highly credentialed expert, is not sufficient. But let's go one step further, and the final step is not only was it not corroborated in the record, but was it corroborated by any of the other factors that Daubert would look to? Okay, so if we're in new territory, how about some confirmation in testing? Nope, didn't exist. A study? No, didn't exist. Literature? No, didn't exist. General acceptance? Well, nobody had tried this before. He went down the list of Daubert factors, and there was no substantiation for this opinion. In those circumstances, Your Honor, it cannot be labeled an abuse of discretion to reject that opinion. If Dr. Furzocco goes, Your Honor is right, they don't have any product theories because they need a specific causation theory to substantiate any of their product liability claims, including failure to warn. Moving beyond that to Dr. Hyman, we run into exactly the same problem. The judge looked at his contracture theory, which has now been relabeled as a defect theory, and said where is the support for it in the record or in the analysis that Daubert would expect, and it wasn't there. Dr. Hyman admitted this was a first-time in litigation opinion for him, too. Okay, so let's look at it. Was it tested? No. Not on Ms. Bowersock's patch, not on any ring patch at all. Was there any literature that supported this mechanism of injury? No, it didn't exist. Was there any other case that he had participated in where he saw this? No, it was the same as Dr. Furzocco. He didn't see it. Was there any objective justification for it in the rest of the buckle litigation or the patch litigation? No, that wasn't there either. So when you run through the list again of corroborating factors under Daubert, you don't get any substantiation for his opinion, and again, in those circumstances, Your Honors, there is no abuse of discretion in rejecting an opinion that's unreliable. And also, of course, his opinion doesn't fit this litigation. He admitted it was a hypothetical theory not tied to causation with respect to Ms. Bowersock, and I might add in this respect the idea that he can support Dr. Furzocco in some fashion hypothetically. Dr. Furzocco did not rely on Dr. Hyman's opinion for any reason in his deposition at all. So what we have is inadmissible plus inadmissible, and that is not a way to resist summary judgment. It is the time that summary judgment should be entered. Unless the Court has further questions, we will submit. Well, what was the alternative theory, the mechanism for the infection here? Oh, actually, there was great record substantiation for that. No treater, no specialist, believed that this infection had originated in the bowel or had any peritoneal capacity to it at all. What they said was it resulted from the hospitalization, skin infection through the wound, and as counsel indicated, that is the likely source of it. In fact, the notion that the bowel was involved is very rare to say the best, according to the treaters and specialists, wrong as a matter of fact. The fecal bacteria, whatever it was, entered through the skin. It was an abscess on the abdomen, no bowel cavity aspect to it at all, and that was the explanation for the infection that they cultured and treated. Unless there's further questions, we'll submit. Thank you. Thank you. Mr. Tasson. Two topics to touch on very quickly. The conclusions drawn from a differential diagnosis, those eight items that the court did not consider, is the reason for the abuse of discretion. A differential diagnosis under the law does not need to be peer-reviewed and can't be peer-reviewed since it is case-specific on a patient, specifically what the sequelae was in this case. But with a differential diagnosis, the question is if the conclusions are based upon deliberate supported evidence. And those eight that I discussed make the difference of why Dr. Furzoco should not be excluded. To touch on just very briefly with regard to counsel's argument, the Bailey case with regard to waiver, I believe, is directly on point. We made all of the arguments, and it is my fault, that we did not use the exact term in the summary judgment motion. And that is my fault. But when we moved to correct error, we didn't add facts, opinions, not one thing other than to say to the court, under the motion to correct error, the term should be used as differential diagnosis. So it was raised at the trial court's level, not the first time. And the court under Bailey had the opportunity to change its mind, but did not, and that was one of our reasons for the notice of appeal. All right. You will have to wrap up. Your time has expired. Okay. I have nothing else. Thank you very much. All right. Thank you. Our thanks to both counsel. The case is taken under advisement.